**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CARL CRAWFORD,

                                        Plaintiff,

         - v -                                              Civ. No. 9:06-CV-521
                                                                      (DNH/RFT)
T.R. CRAIG, EVELYN MILLER,
DR. DAWN MARINI, S. LIBERTY,
E. HUGHES, E. SWEATT,

                                        Defendants.


**APPEARANCES:**                              **OF COUNSEL:**

CARL CRAWFORD
Plaintiff, *Pro Se*
57110-066
FCI Ray Brook
P.O. Box 9005
Ray Brook, N.Y. 12977

HON. GLENN T. SUDDABY                          WILLIAM H. PEASE, ESQ.
United States Attorney for the                 Assistant United States Attorney
Northern District of New York
Attorney for Defendants
100 South Clinton St.
Syracuse, N.Y. 13261-7198

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

         *Pro se* Plaintiff Carl Crawford brings this civil rights action, pursuant to 42 U.S.C. §§ 1983

& 1985,[1] and *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971),

---

[1] Plaintiff does not specifically reference § 1985 in his Complaint, however, it is clear that he intends to bring a claim of conspiracy against the Defendants.  Because no Defendant is asserted to have acted under color of state law, § 1983 is not applicable to Plaintiff's claims.  Thus, we construe this *pro se* claim liberally to assert claims under both *Bivens* and § 1985.

alleging that the Defendants conspired to deprive him of the medical treatment he required, thereby violating his Eighth Amendment rights. Dkt. No. 1, Compl. Defendants now bring a Motion for Summary Judgment under Federal Rule of Civil Procedure 56 (Dkt. No. 28), which the Plaintiff opposes, (Dkt. No. 29). For the reasons that follow, it is recommended that the Defendants' Motion be **granted**.

## I. BACKGROUND

The following facts were derived mainly from the Defendants' Statement of Material Facts, submitted in accordance with N.D.N.Y.L.R. 7.1, which were not, in their entirety, specifically countered nor opposed by Plaintiff.[2] *See* N.D.N.Y.L.R. 7.1(a)(3) ("<u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.</u>" (emphasis in original)). In any event, most, if not all, of the material facts are not in dispute, but rather, the issue is whether those facts give rise to constitutional violations.

Plaintiff arrived at the Federal Correctional Institute (FCI) Ray Brook on January 13, 2005. Dkt. No. 28, Defs.' 7.1 Statement, at ¶ 1. On May 19, 2005, Plaintiff complained to Defendant Physician's Assistant (PA) Liberty about a "boil" on his buttock, and informed Liberty that boils had been coming and going over the previous eight months. Defendant Liberty evaluated Plaintiff and observed a three centimeter, hard erythematous[3] mass on the inner surface of his right buttock. *Id.*

---

[2] In his Opposition to the Defendants' Motion for Summary Judgment, Plaintiff states "Plaintiff's Statement of Material Facts are <u>not</u> in dispute by the defendants." Dkt. No. 29, Pl.'s Opp. to Defs.' Mot. for Summ. J., at p. 3 (emphasis in original). Plaintiff goes on to make his own statement of facts, without reference to Defendants' 7.1 Statement. *Id.* at p. 5. Because Plaintiff is proceeding *pro se*, we cross-referenced his statement of facts with Defendants' 7.1 Statement in order to ascertain any facts in dispute.

[3] Erythema is "a name applied to redness of the skin produced by congestion of the capillaries, which may result from a variety of causes[.]" DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 576 (28th ed. 1994).

at ¶¶ 2-4.  PA Liberty tentatively diagnosed Plaintiff with a rectal abscess[4] and prescribed Ciprofloxacin for a possible staph[5] infection, Metronidazole for a possible bacterial infection, and Mupirocin ointment to eradicate potentially colonized Methicillin-resistant Staphaureus ("MRSA")[6] in his nasal passages.  *Id*. at ¶ 5.  In addition, Liberty removed Plaintiff from his Food Service work assignment, gave him an "idle" so he did not have to work from May 19 through May 22, 2005, and recommended a surgical consultation to confirm whether the "boil" was a perirectal abscess.  *Id*. at ¶ 6.  Plaintiff claims he requested blood work "for his safety and health."   Dkt. No. 29, Pl.'s Opp. to Defs.' Mot. for Summ. J., at Statement of Facts (hereinafter "Pl.'s Statement of Facts"), ¶ 6.

On August 11, 2005, Plaintiff consulted with Dr. David Merkel[7] regarding his recurrent perirectal abscess, and following a digital rectal examination, Dr. Merkel concluded that surgical intervention was not appropriate at that time.  *Id.* at ¶ 11.  On August 25, 2005, Plaintiff again complained of a lump on his right buttock to Defendant Nurse Practitioner (NP) Hughes,[8] who observed a round, hard, moveable mass approximately one centimeter in size which was non-draining at the time.  Hughes diagnosed a reoccurrence of the rectal abscess and prescribed the same combination of Ciprofloxacin, Metronidazole, and Mupirocin as had Defendant Liberty.  *Id.* at ¶¶

---

[4] An abscess is a "localized collection of pus buried in tissues, organs, or confined spaces."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 5 (28th ed. 1994).

[5] Staphylococcus aureas bacteria, or "staph," is a common bacteria that can be found on the skin, nose, or throat. Information *available at* www.mayoclinic.com.

[6] MRSA is "a strain of staph that's resistant to the broad-spectrum antibiotics commonly used to treat it.  MRSA can be fatal."  Information *available at* www.mayoclinic.com.

[7] Dr. Merkel is not a named Defendant in this action.

[8] In his Statement of Facts, Plaintiff asserts that he complained to Defendant Hughes on July 25, 2005, *see* Pl.'s Statement of Facts, at ¶ 11, though Plaintiff's medical record indicates he registered his complaint with Hughes on August 25th, Dkt. No. 28, Mot. for Summ. J., Dawn Marini, M.D., Decl., dated Feb. 4, 2008, Ex. A, part 3, Pl.'s Medical R. (hereinafter "Pl.'s Medical R."), at entry dated Aug. 25, 2005.

13-14. Plaintiff claims he petitioned Hughes for blood work on that date but was denied. Pl.'s Statement of Facts at ¶ 13.

Plaintiff was not evaluated again until October 31, 2005,[9] when he complained to Defendant PA Sweatt about a bump under his right armpit. *Id.* at ¶ 15. Sweatt observed on Plaintiff's armpit a two-centimeter, tender, nonfluctuant cyst with minimal erythema, and diagnosed an abscess. Sweatt then instructed Plaintiff to place a warm washcloth with soap on the area and prescribed the same combination of Ciprofloxacin, Metronidazole, and Mupirocin as had Liberty and Hughes. *Id.* at ¶¶ 17-18. Plaintiff claims he again requested blood work and was denied by Sweatt. Pl.'s Statement of Facts at ¶ 27.

Plaintiff returned to the Health Services Unit ("HSU") on November 3 and 7, 2005, for a check of the abscess in his right armpit. Defs.' 7.1 Statement at ¶¶ 19 & 22. On the November 3rd visit, PA Liberty observed a one-centimeter mass that was slightly red and tender to palpation, and directed Plaintiff to continue taking the prescribed antibiotics and using the warm compresses. *Id.* at ¶ 21. Plaintiff claims he requested blood work during that visit. Pl.'s Statement of Facts at ¶ 28. On the November 7th visit, PA Sweatt observed that the abscess was resolving and the area had hardened and ceased to be tender or produce any discharge. Sweatt also directed Plaintiff to complete his prescribed antibiotics and continue applying warm compresses to the affected area. Defs.' 7.1 Statement at ¶ 22.

On December 20, 2005, Plaintiff complained to PA Liberty that he was "breaking out" on his face and back and stated he believed the break-out was due to a staph infection and requested blood work in order to diagnose the cause of the break-out. *Id.* at ¶ 24. PA Liberty diagnosed

---

[9] Plaintiff avers that this consultation occurred on October 30, 2005, however, his medical record indicates he was seen on October 31, 2005. *See* Pl.'s Medical R., at entry dated Oct. 31, 2005.

Plaintiff with dermatitis and prescribed him a hydrocorisone cream for the rash and denied his request for blood work as Plaintiff did not exhibit any symptoms of a staph infection. *Id*. at ¶ 25.

Plaintiff left FCI Ray Brook on April 10, 2006, and arrived at the Federal Detention Center in Philadelphia, Pennsylvania ("FDC Philadelphia") on April 17, 2006. *Id*. at ¶ 26. On May 11, 2006, Plaintiff complained to the FDC Philadelphia medical staff about boils he gets on his buttocks, though he did not have any boils at that time. *Id*. at ¶ 27. The medical staff advised Plaintiff to return to the HSU when another boil appeared in order to culture any such boil. *Id.* at ¶ 28. Plaintiff returned to FCI Ray Brook on July 14, 2006. *Id.* at ¶ 29. Since his return to FCI Ray Brook, Plaintiff has not been seen by medical staff for any boil or abscess, though he has been treated for various other health problems. *Id.* at ¶ 30.

Plaintiff filed three administrative remedies challenging his medical care and seeking blood work for his boil condition. *Id*. at ¶ 31. Those remedies were filed on April 5, 2005, February 16, 2006, and May 15, 2006, respectively. Dkt. No. 28, Cheryl Magnusson Decl., dated Feb. 6, 2008, at ¶¶ 8-10 & Ex. A at pp. 3-5. All three of these administrative remedies were denied on procedural grounds. Defs.' 7.1 Statement at ¶¶ 32-33. Plaintiff filed the instant Complaint on April 28, 2006. Dkt. No. 1, Compl.

## II. DISCUSSION

### A. Standard of Review

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no

genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.  *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant.  *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any

genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . .  interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).  Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B.  Unserved Defendants

Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within 120 days of the filing of the complaint. Fed. R. Civ. P. 4(m).[10]  Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant. *Id.*

In this case, there is no indication that Defendants Ellen Sweatt and E. Hughes were properly served. *See* Dkt. No. 22.  Although the courts must afford plaintiffs notice before they may dismiss a claim for failure to serve a defendant, Fed. R. Civ. P. 4(m), in this case, because Plaintiff's claims lack merit, granting Plaintiff the opportunity to properly serve these Defendants would be futile. Thus, it is recommended that Plaintiff's claims against these Defendants be **dismissed**.

### C.  Exhaustion

Defendants assert that Plaintiff's claims should be dismissed because he failed to exhaust

---

[10] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days.  N.D.N.Y.L.R. 4.1(b).

his administrative remedies before bringing this action in federal court.  The Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), restricts inmates from bringing an action under federal law "with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Plaintiffs properly exhaust their claims when they "compl[y] with the system's critical procedural rules." *Woodford v. Ngo*, 126 S. Ct. 2378, 2388 (2006).  Failure to exhaust must be pled as an affirmative defense, which the Defendants have done in this case. *Jones v. Bock*, 127 S. Ct. 910, 918 (2007).

The United States Bureau of Prisons (BOP) has a three-tiered administrative remedy system. 28 C.F.R. §§ 542.13-542.15.  At the first tier, an inmate must present an issue informally to staff, the second requires an inmate to file a written remedy request with the Warden, and the third tier requires an inmate to file appeals with the appropriate Regional Director and then with the General Counsel. *Id.*, *see also Macias v. Zenk*, 495 F.3d 37, 42 (2d Cir. 2007).  An inmate may bypass the administrative remedy program by filing a "sensitive" administrative remedy with the Regional Direction if the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the request became known at the institution.  28 C.F.R. § 542.14(d)(1).

In this case, Plaintiff filed three administrative remedies related to his health care.  The first, filed on April 5, 2005, was filed with the Warden of FCI Ray Brook and alleged insufficient care from HSU.  That complaint was rejected because Plaintiff failed to provide or attempt to provide proof of attempting an informal resolution prior to filing the administrative remedy, and because he

raised more than one issue in a single request. Magnusson Decl. at ¶ 8 & Ex. A, p. 4. On February 16, 2006, Plaintiff filed an administrative remedy with the Regional Director for the Northeast Region, requesting blood work for his boil condition. The Regional Director rejected that administrative remedy because the issue raised was not "sensitive," and Plaintiff was therefore directed to file the remedy with the Warden as per the normal three-step process. *Id*. at ¶ 9 & Ex. A, p. 5. On May 15, 2006, Plaintiff appealed the Regional Director's rejection of his February 16th administrative remedy to the General Counsel's Office, which concurred with the Regional Director's declaration that Plaintiff's issue was not "sensitive" under 28 C.F.R. § 542.14(d)(1), and therefore directed Plaintiff to file his request at the appropriate institutional level.[11] *Id*. at ¶ 10 & Ex. A, p. 6. Thus, all three Plaintiff's administrative remedies were rejected for procedural reasons. The record does not indicate that Plaintiff attempted to re-file any of these ill-fated administrative remedies in the proper fashion, nor that he filed any other administrative remedies with respect to the deliberate indifference claims he raises here.

The Second Circuit has developed a three-part test to determine when dismissal of a complaint is warranted for failure to exhaust under the PLRA. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). First, the court must ask whether the administrative remedies were available to the plaintiff at the relevant times. *Id*. Second, if such remedy was available, the court should ask whether the defendants have forfeited this affirmative defense by failing to raise or preserve it, or if the defendants should be estopped from asserting failure to exhaust because they somehow inhibited the inmates' exhaustion. *Id*. Finally, the court must consider any special circumstances that could justify the prisoner's failure to properly exhaust. *Id*.

---

[11] We note that this administrative appeal was filed after Plaintiff initiated this Federal action on April 28, 2006.

Since Defendants put forth the affirmative defense of failure to exhaust, this Court will make the three-step inquiry set forth by the Second Circuit.  With regard to the first inquiry, depending on the prisoner's explanation, the Court must decide whether the remedies were "available."  There is nothing in the record indicating that administrative remedies were not available to Plaintiff.  To the contrary, the record shows Plaintiff filed eleven such remedies during the period relevant to this lawsuit.  *See* Magnusson Decl., Ex. A, Pl.'s Admin. Remedies.

Concluding, therefore, that administrative remedies were available to Plaintiff, we note again that Defendants have properly interposed this affirmative defense in this Motion for Summary Judgment which was filed in response to Plaintiff's Complaint.  *See* FED. R. CIV. P. 56(b) (defendant may move for summary judgment at any time); *see also Weldon v. United States*, 845 F. Supp. 72, 81 n.9 (N.D.N.Y. 1994) (stating an affirmative defense may be properly invoked in a motion for summary judgment if the motion is filed before the answer).  Secondly, there is no allegation nor evidence on the record indicating that any Defendant prevented Plaintiff in any way from utilizing the administrative remedies that were available to him.  The Defendants are therefore not estopped from pleading this affirmative defense.

Finally, we must consider whether any special circumstances exist that justify Plaintiff's failure to exhaust.  Plaintiff states that "he was unable to exhaust all his administrative remedies [] at Ray Brook [] because his health problem was very sensitive at that time."  Pl.'s Opp. to Defs.' Mot. for Summ. J., at p. 4.  Although we can appreciate the generally sensitive nature of one's personal medical issues, there is no contention or evidence on the record that Plaintiff would have endangered himself by utilizing the facility's administrative remedial process in the correct procedural fashion.  Plaintiff was willing to file the aforementioned administrative remedies

*-10-*

concerning his health care, he merely failed to follow proper procedure in doing so.  Furthermore, his requests for blood work belie his contention that those issues were too "sensitive" to properly exhaust them.  In sum, his conclusory claim that his failure to exhaust is justified by the "sensitive" nature of his medical problems is therefore without merit.  *See, e.g., Simmat v. Smith*, 602 F. Supp. 18 (D.C.N.Y.), *aff'd*, 779 F.2d 38 (2d Cir. 1985) (stating plaintiff's failure to exhaust was not excused by the "sensitive" nature of his complaint because there was no evidence he would be endangering himself).

For all the reasons above, we find that Plaintiff did not properly exhaust his claims under the PLRA, and therefore we recommend **dismissal** of his Complaint.

### D.  Eighth Amendment Claim

Even assuming, *arguendo*, that Plaintiff's Eighth Amendment claim were properly exhausted, it is still without merit.  Plaintiff brought this claim pursuant to *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which recognized the existence of a cognizable claim in certain instances for alleged constitutional violations committed by federal agents.  *See Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981) (noting that a *Bivens* action is a judicially-created remedy); *see also Carlson v. Green*, 445 U.S. 14, 18 (1980) ("Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.").  The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities.  *See Polanco v. United States Drug Enforcement Admin.*, 158 F.3d 647, 652 (2d Cir. 1998).   In order to state a *Bivens* claim, a plaintiff must allege a constitutional deprivation by defendants acting under color of federal law.  *Soichet v. Toracinta*, 1995 WL 489434, at *3

*-11-*

(S.D.N.Y. Aug. 16, 1995) (citing *Barbera v. Smith*, 654 F. Supp. 386, 390 (S.D.N.Y. 1987)).

Generally, case law under 42 U.S.C. § 1983 applies to *Bivens* cases. *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987) (quoting *Ellis v. Blum*, 643 F.2d at 84).

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Far from displaying a deliberate indifference, the record shows that the medical staff at FCI Ray Brook paid attention to Plaintiff's boils and prescribed treatment in each instance he complained of pain and discomfort. *See* Pl.'s Medical R. at entries dated May 19, Aug. 11, Aug. 25, Oct. 31, Nov. 3, Nov. 7, & Dec. 20, 2005. The fact that Plaintiff did not receive the blood work he requested does not constitute deliberate indifference as disagreement over the course of treatment does not provide a basis for an Eighth Amendment violation. *See, e.g., Smith v. Woods*, 2008 WL 788573, at *8 (N.D.N.Y. Mar. 20, 2008) (*citing Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). Thus, Plaintiff's Eighth Amendment claim should be **dismissed**.

### D. § 1985 Conspiracy Claim[12]

Again assuming, *arguendo*, that Plaintiff's claims was properly exhausted, his claim that the Defendants conspired against him would also fail. The third subsection of 42 U.S.C. § 1985, which is the only part of this statute applicable to the conspiracy claim made in this case, states, in pertinent part:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of

---

[12] As opposed to § 1983, 42 U.S.C. § 1985 is not "dependent for [its] applicability upon a showing of action taken under color of state law." *Colon v. Sawyer*, 2006 WL 721763, at *6 (N.D.N.Y. Mar. 20, 2006); *see also* 42 U.S.C. § 1985(3).

equal privileges and immunities under the laws; . . . , if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the Untied States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

To recover under this section, a plaintiff must show the existence of (1) a conspiracy (2) meant to deprive a person or persons of the equal protection of the laws or privileges and immunities under the laws with "(3) an overt act in furtherance of the conspiracy[,] (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States[,]," and (5) "some racial or perhaps otherwise class-based, invidious discriminatory animus[.]" *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citations omitted).

In his Complaint, Plaintiff does not allege that he was the victim of racial or class-based invidious discriminatory animus.  Nor has Plaintiff offered any proof of a conspiracy between the Defendants other than the conclusory and baseless contention  that "[t]he fact that prison staff each prescribed the same medication that[] [was] deficient shows that everyone was in agreement with the conspiracy to the denial [sic] of effective health treatment for [Plaintiff]."  Compl. at p. 3.  That Plaintiff was provided treatment by each of the Defendants is evidence that his Eighth Amendment rights were not violated, not that the Defendants conspired against him.

For all these reasons it is recommended that Plaintiff's Eighth Amendment and conspiracy claims be **dismissed.**

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 28) be

*-13-*

**GRANTED** and the Plaintiff's Complaint (Dkt. No. 1) **DISMISSED**; and it is further

   **ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

   Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y*

*of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. r.

Civ. P. 72, 6(a), & 6(e).


Date: August 21, 2008
   Albany, New York



RANDOLPH F. TREECE
United States Magistrate Judge